IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTOPHER BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-779-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Alan S. Graf
P. O. Box 98
Summertown, TN  38483

Kimberly K. Tucker
SWANSON, THOMAS & COON
820 S.W. Second, Suite 200
Portland, OR  97204

  Attorneys for Plaintiff

Michael McGaughran
Richard A. Morris
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900
M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

JONES, Judge:

Plaintiff Christopher Barrow seeks judicial review of a final decision of the

Commissioner of Social Security denying his application for Supplemental Security Income

("SSI") disability benefits under Title XVI of the Social Security Act.  *See* 42 U.S.C. §§ 1381-

83f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C.

§ 405(g).  Following a careful review of the record, I conclude that the Commissioner's decision

denying plaintiff SSI benefits is based on proper legal standards, is supported by substantial

evidence, and therefore must be affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff was born on May 2, 1972; he was therefore twenty-eight years old on June 27,

2000, the date on which he protectively filed his application for SSI benefits.  Tr. 17, 75-76.[1]

Plaintiff alleges that he has suffered from a disability since birth, with current symptoms of

anxiety, panic attacks, fear of public situations, headaches, and chest pain.  Tr. 80, 88.  He has a

limited education, having completed general special education classes through the 8th grade

---

[1] Citations to the official transcript of the Social Security administrative record (#8), filed with the court on September 28, 2005, are referred to throughout as "Tr."

2 - OPINION AND ORDER

level, and has no record of prior work.  Tr. 93, 99.  Plaintiff's SSI application was denied

initially, and upon reconsideration.  Tr. 29, 37.  On August 13, 2001, plaintiff filed a second

application for SSI benefits based on the same disability allegations; this application was also

denied initially, and upon reconsideration.  Tr. 79, 40, 48.  Plaintiff filed a request for hearing by

an Administrative Law Judge ("ALJ") on May 24, 2002.

Meanwhile, plaintiff had an administrative appeal pending from an earlier SSI claim.

Plaintiff first filed an application for SSI benefits on February 17, 1998, alleging disability from

dependent personality disorder, anxiety, and related symptoms; this application was denied

initially and upon reconsideration.  Tr. 318.  Following a hearing on the merits of the application,

ALJ Bennett Engelman issued a decision on September 10, 1999, in which he found that plaintiff

was not "under a disability" as defined in the Social Security Act and regulations.  Tr. 318-26.

On November 27, 2002, the Appeals Council affirmed ALJ Engelman's decision.  Tr. 283.

According to the record, plaintiff did not pursue any further appeals.

On April 17, 2003, ALJ Dan Hyatt conducted the hearing relating to plaintiff's June

2000, and August 2001 applications.  Tr. 283.  Applying the principles of res judicata, ALJ Hyatt

found no good cause to reopen or revise the September 1999 decision, which represents the final

administrative action on plaintiff's 1998 application.  Tr. 15, 283.  Plaintiff, who was represented

by an attorney, appeared and testified, as did plaintiff's mother, Virginia Barrow.  Tr. 283.

Although a vocational expert ("VE") was present at the hearing, she was not called upon to

testify.  Because plaintiff needed to obtain additional medical records, the ALJ recessed and

reconvened the hearing on October 28, 2003.  Tr. 298-99, 302.  Present at the October hearing

were plaintiff, his attorney, his mother, a VE, and impartial medical expert Larry Hart, M.D., a

psychologist, who was the only person to testify during this proceeding.  Tr. 302-14.

On December 5, 2003, ALJ Hyatt issued a decision denying plaintiff's consolidated June

2000 and August 2001 applications, finding that plaintiff was not disabled as defined by the

Social Security Act, and therefore was not eligible to receive SSI payments.  Tr. 15-16.  The

ALJ's decision became the final decision of the Commissioner on April 1, 2005, when the

Appeals Council declined review.  Tr. 5; *see also* 20 C.F.R. §§ 416.1481, 422.210.  Plaintiff

timely filed a complaint in this court to challenge ALJ Hyatt's December 2003 decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.

42 U.S.C. § 405(g); *see also* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  The court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be

upheld if it is a rational interpretation of the evidence, even if there are other possible rational

interpretations.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at

1039-40.

## SUMMARY OF THE ALJ'S FINDINGS

Acknowledging that the September 10, 1999, decision issued by ALJ Engleman was

recently affirmed by the Appeals Council, ALJ Hyatt applied the principles of res judicata to

limit his inquiry to whether plaintiff had become disabled at any time since his protective filing date of June 27, 2000. Tr. 15-16. Further, ALJ Hyatt determined that plaintiff was required to demonstrate some form of changed circumstances, such as a material worsening of his existing impairment, or the presence of new impairments, to overcome the presumption of continuing non-disability arising from ALJ Engleman's prior findings. Tr. 283-84, 312-14.

If a claimant overcomes the presumption of non-disability, he must still prove that he is disabled. Schneider v. Commissioner, 223 F.3d 968, 974 (9th Cir. 2000). Without specifically finding whether or not plaintiff had overcome the presumption of non-disability, ALJ Hyatt proceeded to employ the five-step "sequential evaluation" process to evaluate plaintiff's disability. See 20 C.F.R. § 416.920. A claimant has the initial burden of proving a disability in steps one through four of the analysis. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Then, if the claimant establishes that he is unable to continue his past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful activity in jobs existing in significant numbers in the national economy. See id. (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989)); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

In this case, ALJ Hyatt first determined that plaintiff has not engaged in substantial gainful activity since the protective filing date of June 27, 2000. Tr. 23. This finding is not in dispute.

Second, ALJ Hyatt found that plaintiff suffers from dependent personality disorder, and that this impairment is severe. Tr. 23. He found further that plaintiff's alleged impairments of anxiety-related disorders, depressive disorders, and intermittent explosive disorder ("IED") are

non-severe.  Tr. 17.  Plaintiff disputes the finding that his severe impairment consists <u>only</u> of

dependent personality disorder, and argues that the ALJ ignored diagnoses of IED, dysthymia,

agoraphobia, generalized anxiety disorder, schizo avoidant disorder, social phobia, and schizoid

personality disorder.  (Pl.'s Opening Br. (# 14) at 7.)

        Third, ALJ Hyatt determined that plaintiff's medically determinable impairment did not

meet or equal the requirements of any impairment in the Listing of Impairments, Appendix 1,

Subpart P, Regulations Part 404.  Tr. 23.  Plaintiff disputes this step three finding.  (Pl.'s Opening

Br. at 7.)  Next, based on the Mental Residual Functional Capacity Forms in the record, the ALJ

determined that plaintiff retained the residual functional capacity ("RFC") for heavy exertion,

with the following vocational non-exertional limitations:  plaintiff is restricted to simple, routine

work; moderately functionally limited in maintaining attention and concentration for extended

periods of time; limited to minimal contact with the general public; able to understand,

remember and carry out only simple instructions.  Tr. 22-23.  This RFC determination is in

dispute.  (Pl.'s Opening Br. at 8-12.)

        At the fourth step of the evaluation, ALJ Hyatt determined that plaintiff had no past

relevant work, and the record shows that plaintiff has never been gainfully employed.  Tr. 23, 99.

This finding is undisputed.

        At step five, the Commissioner has the burden of showing that a claimant can perform

jobs that exist in significant numbers in the national economy, *see* <u>Tackett</u>, 180 F.3d at 1099, and

she may meet this burden with the testimony of a vocational expert or by reference to the

Medical-Vocational Guidelines ("Guidelines"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.  If the

Commissioner demonstrates that there are a significant number of jobs that the claimant can

6 - OPINION AND ORDER

perform, then the claimant is not disabled.  Tackett, 180 F.3d at 1098-99; 20 C.F.R.

§ 416.920(g)(1).  Accordingly, having determined that plaintiff had the RFC to perform heavy or

very heavy work, ALJ Hyatt applied Rule 204.00 from the Guidelines to support his step five

finding that plaintiff was not disabled.  Tr. 22-24.  By its own terms, a finding that Rule 204.00

applies means that a claimant has the "functional capability for work at the lesser functional

levels as well, and represents substantial work capability for jobs in the national economy at all

skill and physical demand levels."  20 C.F.R. Pt. 404, Subpt. P, App. 2.  Plaintiff disputes this

finding, particularly the application of Rule 204.00, and contends that because he suffers from a

verified psychological impairment, the presence of this non-exertional limitation precludes using

the Guidelines alone to establish that a significant number of jobs exist which he can perform.[2]

(Pl.'s Opening Br. at 7-9).

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record.  Therefore, I will

not repeat the evidence except as necessary to explain my decision.

## DISCUSSION

When a claimant's application for SSI benefits is denied by the Commissioner in a prior

administrative ruling and the claimant does not appeal, the decision denying benefits becomes

binding on all parties and creates a presumption of continuing non-disability.  Chavez v. Bowen,

_____

[2]In addition, where there is evidence of a mental impairment that allegedly prevents a
claimant from working, the Commissioner must supplement the five-step sequential evaluation
process with additional regulations dealing specifically with mental impairments.  Maier v.
Commissioner, 154 F.3d 913, 914 (9th Cir.1998); 20 C.F.R. § 416.920a.  I note that ALJ Hyatt
engaged in this supplemental inquiry; however, because plaintiff did not allege any specific error
with respect to this analysis,  I will not address it further.

844 F.2d 691, 693 (9th Cir. 1988).   Although plaintiff alleges numerous errors in ALJ Hyatt's

disability analysis, he ignores the threshold issue of whether or not he has overcome the

presumption of non-disability created by ALJ Engleman's prior ruling that plaintiff's severe

dependent personality disorder does not impair him to the extent that he is prevented from

performing substantial gainful activity.  Tr. 323; *and see* <u>Schneider</u>, 223 F.3d at 973.  To do so,

plaintiff "must prove 'changed circumstances' indicating a greater disability."  <u>Chavez</u>, 844 F.2d

at 693.  The Commissioner contends that plaintiff has not demonstrated sufficient evidence of

"changed circumstances" to overcome the presumption of continuing non-disability.  (Def.'s Br.

(#16) at 6-7).  I agree.

At the beginning of the hearing in April of 2003, ALJ Hyatt notified plaintiff's counsel

that he was required to apply the principles of res judicata to the proceeding, and counsel agreed

that there were no new impairments alleged, "just the nature of the anxiety disorder that now

seems to be accompanied by a depressive disorder."  Tr. 283.  Accordingly, in the body of his

written decision, ALJ Hyatt reviewed the medical evidence underlying ALJ Engleman's prior

decision, and compared it with the new medical evidence submitted by plaintiff.  *See* Tr. 16-20.

ALJ Hyatt concluded that, "[s]ince the decision of September 10, 1999, I find the updated

medical evidence of record reflects little, if any changes in the nature and severity of the

claimant's personality disorder."  Tr. 18.

ALJ Hyatt's determination is supported by the testimony of impartial medical expert Dr.

Larry Hart, a psychologist who studied the medical records at issue.  At the October 2003

hearing, ALJ Hyatt and plaintiff's counsel agreed that the issue in the case was whether "the

existing mental impairment has actually materially worsened and reduced the functional capacity

8 - OPINION AND ORDER

of the claimant." Tr. 304.  Accordingly, the specific question posed to Dr. Hart was, "whether, in your opinion, based on your review of the file there has been a material worsening in Mr. Barrow's condition since September 10, 1999," id., to which Dr. Hart replied, "My inclination, Judge, is to say no, that there is no worsening since that time."  Tr. 305.

Dr. Hart pointed out that there was one anomaly in the record from a psychiatric examination conducted on March 30, 2000, at Oregon Health Sciences University ("OHSU") by Dr. Joshua Boverman, M.D., where plaintiff's GAF score was only 35.  Tr. 196.  However, Dr. Boverman's determination resulted from an initial screening, and he specifically declined to comment on plaintiff's level of disability, writing that "I recommended that . . . [Mr. Barrow] seek independent evaluation to determine is level of disability, as I find it difficult to both provide treatment and certify disability."  Tr. 196.  Dr. Hart noted that in 2000, other medical providers' GAF scores ranged between 55 and 60, Tr. 305, and ALJ Hyatt resolved the ambiguity by relying upon the April 7, 2000, OHSU discharge assessment summary provided by treating physician Dr. Heidi Brockman-Astrue, in which she assessed a GAF score of 60, indicating that plaintiff suffered from a mild to moderate impairment.  Tr. 18, 199.  After reviewing plaintiff's record of psychological examinations, Dr. Hart again testified, "[L]ooking at the file, I don't see any significant change in . . . [Mr. Barrow's] condition."  Tr. 305.

Plaintiff's updated medical records contain conflicting assessments and diagnoses, as they did in the prior adjudication, and ALJ Hyatt properly resolved the ambiguities by relying on the testimony from Dr. Hart, who noted that there was very little documentation of plaintiff's disorders, and as a result there are "multiple diagnostic dilemmas in this entire file because of problems with his personality, problems with his behavior, problems with compliance, with

taking medications and not taking medications." Tr. 306. The record as a whole shows that plaintiff would seek psychiatric evaluations or treatment for some externally motivated reason, such as to avoid jury duty, Tr. 238; to qualify for food stamps, Tr. 278; or to support his applications for SSI benefits; however, he would participate only briefly--if at all--in the therapies recommended by his healthcare providers. Dr. Hart ultimately opined that plaintiff suffered from mixed personality syndrome, non-severe; with avoidant, schizoid, and dependent characteristics. Tr. 307. I conclude that ALJ Hyatt's determination that plaintiff's mental impairment did not materially change is supported by substantial evidence in the record, including evaluations and treatment records from multiple treatment providers, as well as the longitudinal summary of the evidence provided by Dr. Hart.

Accordingly, plaintiff did not rebut the presumption of continuing non-disability. As a result, ALJ Hyatt was relieved of the obligation to engage in the five-step "sequential evaluation" process to further evaluate plaintiff's alleged disability. *See* Chavez, 844 F.2d at 693; *and see* Schneider, 223 F.3d at 973-74. Assuming, without deciding, that ALJ Hyatt committed any legal error when--as plaintiff contends--he failed to consider diagnoses of additional impairments at step two; he failed to find that the combination of plaintiff's impairments met or equaled a disability listing at step three; or he misapplied the Medical-Vocational Guidelines at step five to find plaintiff disabled without obtaining supplemental vocational testimony regarding the impact of plaintiff's established limitations, such error was harmless because the ALJ's findings regarding these issues were not necessary to support his ultimate decision to deny benefits. *See* Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1379-80 (9th Cir. 1984) (holding that any error committed by the ALJ in applying the Guidelines

was harmless because the exercise was unnecessary due to claimant's failure to overcome the

non-disability presumption); *see also* <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir.

2006) (finding that error is harmless if it occurred during a procedure or step that the ALJ was

not required to perform).

<u>**CONCLUSION**</u>

For the foregoing reasons, and based on my review of the record, the Commissioner's

decision denying plaintiff Supplemental Security Income ("SSI") disability benefits under

Title XVI of the Social Security Act is based on proper legal standards, is supported by

substantial evidence on the record as a whole and is, therefore, AFFIRMED.

DATED this 22nd day of September, 2006.


  /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge